# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

KERRI ANN HANSON,
     Plaintiff,

v.                               Case No. 5:25-cv-21-KKM-PRL

FLORIDA DEPARTMENT OF
CORRECTIONS, MANUEL SILIVIA
PASQUEL, and STEPHEN ROSSITER,
     Defendants.

_____

## ORDER

Kerri Ann Hanson sues under 42 U.S.C. § 1983. (Doc. 1.) Defendant Stephen Rossiter moves to dismiss. (Doc. 17.) Hanson opposes the motion. (Doc. 24.) Defendant Florida Department of Corrections (DOC) moves to dismiss. (Doc. 27.) Hanson asks that DOC's motion be granted. (Doc. 28.) Having considered the motions and their respective responses, Rossiter's motion is denied, and DOC's motion is granted.

## I.   HANSON'S PERSONAL ASSAULT ALLEGATIONS

Hanson was an inmate at Lowell Correctional Institution (Lowell), a Florida state prison, in March or April 2022, when she was assigned to paint the interior of

1

the "Captain's Office." (Doc. 1, p. 26.) When Hanson entered the room, Defendant Manuel Silivia Pasquel—a Lowell correctional officer—was completing paperwork at a computer. (*Id.*) Pasquel initiated a conversation with Hanson by asking her personal questions, but Hanson did not engage in the conversation. (*Id.*) Hanson was underneath a desk when Pasquel moved closer to her, began rubbing his penis through his trousers, exposed his penis, and forced it into Hanson's mouth. (*Id.*, pp. 26–27.) Hanson told Pasquel "I don't want to do this." (*Id.*, p. 27.) Two weeks later, Hanson told two other inmates and a mental health professional about the incident. (*Id.*)

After the incident, Pasquel harassed Hanson by threatening to prepare false disciplinary reports against her and making comments like "[w]e are not done with our conversation" while patting his penis. (*Id.*) In December 2023, two correctional officers obstructed Hanson's attempt to file a Prison Rape Elimination Act (PREA) complaint regarding the incident. (*Id.*) Because Hanson could not file the PREA complaint, her grandmother called Lowell to register the complaint on her behalf. (*Id.*, pp. 27–28.) Another correctional officer told Hanson to stop having her family call to complain on her behalf. (*Id.*, p. 28.) After attempting to file another PREA

complaint, a correctional officer told Hanson that if she did not "stop harassing people," she would face more disciplinary reports. (*Id.*)

## II.  HANSON'S  ALLEGATIONS  REGARDING  SEXUAL MISCONDUCT AT LOWELL

Rossiter was the warden at Lowell from July 2019 until September 2022.[1] (*Id.*, p. 2.) Hanson alleges that Lowell had a history of "excessive" sexual misconduct well before Rossiter became warden.[2] (*Id.*, pp. 6–7, 24.) A 2018 PREA report noted that PREA allegations at Lowell doubled from the previous year. (*Id.*, p. 20.) In November 2019, the United States Department of Justice (DOJ) asked Rossiter what steps he was taking to address the increase in PREA allegations, but he could not name any. (*Id.*) Allegations of sexual misconduct at Lowell continued to increase under Rossiter's leadership. (*Id.*, pp. 13–21.)

A 2020 DOJ report noted that Lowell inmates are not safe from physical and sexual abuse by officers. (*Id.*, pp. 2, 9–10.) Importantly, the report noted that "as a

---

[1] Hanson alleges that Rossiter was the assistant warden at Lowell before becoming the warden, but she does not allege for how long Rossiter served as assistant warden. (Doc. 1, p. 2.)

[2] The term "sexual misconduct" encompasses both consensual and nonconsensual "oral, anal, or female genital penetration" between officials and inmates. § 944.35(3)(b)(1), Fla. Stat. Sexual misconduct is a felony under Florida law. *Id.* § 951.221(1).

matter of routine, investigations of sexual misconduct . . . are inadequate and biased; closed, suspended, or disposed based on predetermined outcomes intended to suppress scrutiny[;]" and are "closed prematurely based on OIG's determination that allegations are 'unfounded' after taking only preliminary investigative steps."[3] (*Id.*, p. 23.) The report also noted that, of the 161 cases of sexual misconduct, more than half were closed as "unfounded" at the pre-investigation stage and only eight resulted in an arrest. (*Id.*, pp. 10, 23–24.) In addition, a May 2022 PREA audit found that, in the twelve preceding months, there were ninety-three reports of sexual abuse and eight reports of sexual harassment, and that each of these reports were determined to be unfounded or unsubstantiated. (*Id.*, p. 9.)

Hanson alleges specific facts regarding forty-four reports of officer misconduct from 2011–2022.[4] (*Id.*, pp. 11–20.) Twenty-nine of the reports occurred during Rossiter's three-year tenure, but only twenty-six of these reports allege sexual

---

[3] OIG is the Florida Department of Corrections Office of Inspector General. (Doc. 1, p. 2.) OIG investigates allegations of sexual misconduct within the DOC. (*Id.*, pp. 2, 5, 8–9.)

[4] Each individual report centers around one inmate's allegations, one officer's misconduct, or a combination of the two. Some of the reports contain multiple incidents of misconduct. Thus, although there are forty-four reports, the number of incidents of misconduct is higher. For example, in one report an official was accused of ten different incidents of sexual misconduct, violence, and threatening inmates. (Doc. 1, p. 14, ¶ s.)

harassment and sexual misconduct. (*Id.*, pp. 13–20.) OIG investigated ten reports and determined that they were unfounded.[5] (*Id.*, pp. 14–20, ¶¶ t, y, cc, ff, ii, kk, mm, oo, pp, qq.) Twelve reports were either not investigated or Hanson did not specify whether they were investigated. (*Id.*, pp. 13–18, ¶¶ o, s, v, z, aa, bb, dd, ee, hh, ii, jj, ll.) Two reporting inmates recanted their testimony after they were placed in segregated confinement. (*Id.*, p. 15, ¶¶ w, x.) One report led an officer to resign. (*Id.*, p. 14, ¶ s.) One report was upgraded to a criminal investigation but was not investigated by OIG or Rossiter. (*Id.*, p. 18, ¶ nn.)

Hanson alleges that Pasquel was accused of sexually assaulting four other inmates before he sexually assaulted her. (*Id.*, pp. 2, 25.) Two of the accusations occurred before Rossiter's tenure and the inmates recanted their accusations after they were given a choice between going to solitary confinement for the duration of the investigation or recanting their accusations and remaining in general population. (*Id.*, p. 25.) When they recanted their accusations, the investigation was closed as "unfounded." (*Id.*) The investigation of the third accusation was suspended and never reopened despite a finding that there was sufficient evidence to sustain it. (*Id.*)

---

[5] Hanson provides specific reasons why she believes these investigations were deficient.

The fourth inmate complained to Florida Representative Dianne Hart who personally called Rossiter about the issue. (*Id.*) OIG closed the investigation based on "insufficient evidence" and Rossiter took no action. (*Id.*) Pasquel was also accused of talking about his penis to other inmates, and of maintaining a consensual relationship with an inmate. (*Id.*, pp. 25–26.)

## III.    STEPHEN ROSSITER'S MOTION TO DISMISS

Hanson sues Rossiter for deprivation of rights under the Eighth Amendment (Count III), and negligent supervision (Count VIII) and negligent retention (Count IX) under Florida state tort law. (*Id.*, pp. 30–31, 34–37.) Rossiter moves to dismiss all three claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 17.) Rule 12(b)(6) permits dismissal when a plaintiff fails "to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible on its face when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When deciding whether to grant a motion to dismiss under 12(b)(6), a court must accept the allegations in the complaint as true and construe them in the light most

favorable to the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam). This tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

### a. Count III: Deprivation of Rights

Hanson alleges that Rossiter was aware of a longstanding pattern of sexual harassment, misconduct, and abuse at Lowell, but did nothing to stop it, and she consequently was sexually assaulted in violation of the Eighth Amendment. (Doc. 1, pp. 30–31.) Rossiter argues that he is entitled to qualified immunity. (Doc. 17, pp. 4–9.)

"[S]ection 1983 provides a method for vindicating federal rights conferred by the Constitution and federal statutes." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 997 (11th Cir. 1990). To successfully plead a § 1983 claim, a plaintiff must allege: "(1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." *Id.*; *see also Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("Section 1983 does not create a

7

remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right.").[6]

Qualified immunity shields government officials performing discretionary functions from liability under § 1983 when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To receive qualified immunity, [a] public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. To overcome qualified immunity, the plaintiff must show "that the defendant violated a

---

[6] Rossiter argues that Hanson fails to allege that he acted under color of state law. (Doc. 17, p.4). This contention is contradicted by the complaint. (Doc. 1, p.3) (alleging that Rossiter was, at all relevant times, "acting under the color of law"). Indeed, Rossiter later recognizes as much. (Doc. 17, p.5).

constitutional right" and that the right was clearly established. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007).

Hanson does not dispute that Rossiter was acting within his discretionary authority. (Doc. 24, p. 14.) Consequently, the burden shifts to Hanson to allege that Rossiter violated her clearly established constitutional right. Rossiter does not contest that Hanson's Eight Amendment right against sexual assault was clearly established,[7] and instead focuses on whether he is liable for Pasquel's alleged misconduct. (Doc. 17, pp. 5–9.)

Supervisors are not liable under § 1983 for their employee's actions. *See Ireland v. Prummell*, 53 F.4th 1274, 1289 (11th Cir. 2022) ("Liability under § 1983 cannot be based on the theory of vicarious liability." (citation omitted)). Instead, supervisory liability under § 1983 occurs "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional

---

[7] *See DeJesus v. Lewis*, 14 F.4th 1182, 1196 (11th Cir. 2021) ("[S]exual assault necessarily violates the Eighth Amendment."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) ("The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." (cleaned up and quotation omitted)).

violation.' " *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)). This standard is "extremely rigorous." *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

The requisite "causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Christmas v. Harris County*, 51 F.4th 1348, 1355 (11th Cir. 2022) (quoting *Keith v. DeKalb County*, 749 F.3d 1034, 1048 (11th Cir. 2014)). "Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (cleaned up), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

Hanson plausibly alleges a constitutional violation: sexual assault is objectively sufficiently serious and violates the Eighth Amendment. *DeJesus*, 14 F.4th at 1196; *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' " (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981))).

Hanson also plausibly alleges a causal connection between the Eighth Amendment violation and Rossiter's conduct.[8] Hanson alleges that: (1) "there existed a rampant and unabated pattern of sexual abuse and harassment of the female prisoners by members of the staff"; (2) Rossiter, when he became warden, knew "that staff on inmate sexual misconduct, harassment, and abuse, as well as threats, violence, and the introduction of contraband, were a regular occurrence at Lowell"; and (3) Rossiter did not address these issues because he failed to, among other things, address staffing shortages and create adequate policies to prevent abuse. (*Id.*, p. 2, 7, 20–25.) As for her second contention, Hanson alleges that Rossiter knew that PREA allegations doubled the year before he became warden. (Doc. 1, p. 20.) Hanson also includes allegations of a DOJ report noting 161 cases of sexual

---

[8] Hanson does not allege that Rossiter personally participated in the alleged unconstitutional conduct.

misconduct, a PREA audit noting ninety-three reports of sexual abuse and eight reports of sexual harassment over twelve months, and twenty-six specific reports of sexual misconduct and sexual harassment during Rossiter's tenure. (*Id.*, pp. 2, 9–20, 23–24.) Rossiter even learned that other inmates accused Pasquel of sexual assault. (*Id.*, p. 25.) As for her third contention, Hanson alleges that the persistent and widespread practice of sexual misconduct proliferated because of the official policy of placing alleged victims in involuntary segregated housing during investigations,[9] and the unofficial practices of not following the staffing plan, not installing additional cameras, and not properly investigating allegations of sexual misconduct. (*Id.*, pp. 2, 7–8, 20–25.)

Thus, Hanson plausibly alleges "obvious, flagrant, rampant [abuse] of continued duration, rather than isolated occurrences[,]" that demonstrate a persistent and widespread practice of sexual misconduct at Lowell. *Christmas*, 51 F.4th at 1355 (quoting *Keith*, 749 F.3d at 1048). Hanson also plausibly alleges, in

---

[9] When an inmate is placed in segregated housing, they lose the ability to bathe regularly, interact and associate with other inmates, enjoy recreation, access educational and developmental programs, access their earned privileges, report to their assigned job, and use the telephone. (Doc. 1, p. 8.) Hanson alleges that this policy punishes inmates who report sexual misconduct. (*Id.*)

the light of all this, that Rossiter "knew of the widespread abuse and was 'on notice of the need to correct or to stop' abuse by officers." *Mathews v. Crosby*, 480 F.3d 1265, 1275 (11th Cir. 2007) (quoting *Cottone*, 326 F.3d at 1362); *see id.* at 1274 (concluding that the evidence was sufficient to entitle the plaintiff to proceed to trial when, among other things, the plaintiff "produced evidence from which a jury could find that [the defendant] received copies of all the complaints . . . concerning the abuse of inmates by guards at FSP, including allegations of abuse of [the plaintiff]"); *Danley v. Allen*, 540 F.3d 1298, 1315 (11th Cir. 2008) (concluding that the supervisors had the requisite notice through "force reports and similar documents, inmate complaints, jailer complaints, attorney complaints, judicial officer complaints, and personal observation"), *abrogated in part on other grounds as recognized by Randall*, 610 F.3d at 709. Finally, Hanson plausibly alleges that Rossiter, although on notice, failed to take corrective action. *See supra* at 11–12.

Alternatively, Hanson plausibly alleges "that the *absence* of a policy led to a violation of [her] constitutional rights." *Piazza v. Jefferson County*, 923 F.3d 947, 957 (11th Cir. 2019). Rossiter received "multiple reports of prior misconduct by [Pasquel]," *id.*, but, Hanson says, Rossiter had the practice of "conduct[ing] investigations where the outcome was predetermined to unfound or unsubstantiate

13

the accusations, or conduct[ing] investigations that were lacking in completeness and competency," (Doc. 1, p. 2); *see* (*id.* at pp. at 25–26).[10] These allegations, if true, " 'allow the court to draw the reasonable inference,' that there is a causal connection between [Rossiter's] failure to investigate any allegations of serious misconduct and [Pasquel's] belief that he could act with impunity." *Ingram v. Kubik*, 30 F.4th 1241, 1256 (11th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). The Eleventh Circuit has recognized, in somewhat similar circumstances, that supervisor liability could exist. *See, e.g.*, *id.* at 1256; *see also Franklin v. Tatum*, 627 F. App'x 763, 766–67 (11th Cir. 2015) (concluding that, once the sheriff had notice of an officer's "concerning behavior," the sheriff's "failure to intervene could be the basis for a finding of deliberate indifference"); *Williams v. Santana*, 340 F. App'x 614, 618 (11th Cir. 2009) (per curiam) ("[T]he fact that eight claims of violence or deprivation of

---

[10] Rossiter argues that he has no role in investigations, which are instead conducted by OIG. (Doc. 17, p. 8). But Rossiter provides no support for the proposition that, if he was indeed aware that the OIG investigations "were mere window-dressing, with pre-determined outcomes intended to conceal the widespread pattern of criminal activity and misogynistic behavior of the staff," (Doc. 1, p. 8), he nonetheless remains immune from supervisor liability, *cf. Caldwell*, 748 F.3d at 1099 ("The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." (cleaned up and quotation omitted)).

constitutional rights were lodged against Barazal between July 1998 and August 2002 indicates that Parker was on notice of a potential problem.").

Either way, Hanson sufficiently alleges a causal connection between Rossiter's conduct and the violation of her clearly established Eighth Amendment right to be free from sexual assault. Accordingly, Hanson is not entitled to qualified immunity. *See Ingram*, 30 F.4th at 1256 ("[T]his Court has clearly established that a custom of allowing the use of excessive force provides the requisite fault, as a persistent failure to take disciplinary action against officers can give rise to the inference that a supervisor has ratified conduct." (cleaned up)); *Mathews*, 480 F.3d at 1275 (concluding that "[b]y 1999," it was clearly established that a "warden could face liability under § 1983 predicated on his failure to take reasonable steps in the face of a history of widespread abuse or his adoption of custom or policies which resulted in deliberate indifference").

To the extent that Hanson's argument that Rossiter acted with deliberate indifference is different than her supervisory liability argument, she states a claim for the same reasons. "[A] prison official violates the Eighth Amendment only when two requirements are met." *Farmer*, 511 U.S. at 834. First, the deprivation alleged must be, as an objective matter, sufficiently serious. *See id.* Second, "the plaintiff

must show that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm," and failed to respond reasonably to the risk. *Wade v. McDade*, 106 F.4th 1251, 1255, 1262 (11th Cir. 2024) (en banc). The alleged sexual assault in this case is objectively sufficiently serious, *DeJesus*, 14 F.4th at 1196, and, taken together, Hanson alleges facts which, if true, demonstrate that Rossiter was subjectively aware of the risks and failed to reasonably respond. *See supra* at 11–13; *Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). Rossiter's failure, moreover, violated clearly established law. *See Mathews*, 480 F.3d at 1275.

Rossiter's arguments fail to convince that dismissal is warranted. He first argues that Hanson's allegations are "vague, inflammatory, and unsupported by credible evidence." (Doc. 17, pp. 3–4.) The credibility of Hanson's allegations is not an appropriate consideration on a motion to dismiss. *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1365 (11th Cir. 2021). Further, Hanson's allegations are hardly vague, but rather, are quite detailed and include dates, names, and specific facts about the reports and their investigations. (Doc. 1, pp. 11–20.)

Rossiter also argues that there is insufficient evidence of widespread abuse because the reports were investigated and refuted by OIG and are thus "unsupported by credible evidence." (Doc. 17, pp. 3, 8). Although Rossiter is correct that, if she intends to rely on a "history of widespread abuse" as a predicate for supervisor liability, Hanson must indeed prove that such a history exists, *see Christmas*, 51 F.4th at 1355; *cf. Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987), OIG's investigations do not provide a basis for dismissing Hanson's claim. One of Hanson's main contentions is that OIG's investigations were not sufficient, and she does not make this point in a conclusory way. Instead, she alleges with specificity how investigations were closed or suspended despite supporting evidence or were labeled "unfounded" after cursory inquiries. (Doc. 1, pp. 11, 13, 15–20, 25–26, ¶¶ c, l, o, t, ff, ii, oo, pp, qq.) More importantly, she alleges that the DOJ found OIG does not sufficiently investigate reports of misconduct. (*Id.*, pp. 23–24.) For these reasons, the results of OIG's investigations do not render implausible Hanson's allegations of a history of widespread abuse.

Accordingly, Rossiter's motion to dismiss is **DENIED regarding Count III**.

### b. Count VIII and Count IX: Negligent Supervision and Negligent Retention

Hanson alleges that Rossiter knew about the pattern of sexual misconduct at Lowell and of Pasquel's history of sexually assaulting inmates, but he failed to respond reasonably. (Doc. 1, pp. 35–37.) Rossiter argues that these claims should be dismissed because Hanson admits that the allegations against Pasquel were repudiated or investigated with no action. (Doc. 17, pp. 10–11.)

In Florida, negligent supervision and negligent retention claims are analyzed under the same standard. *Grimm v. City of Boca Raton*, No. 15-80608-CIV-MARRA, 2015 WL 4483974, at *8 (S.D. Fla. July 22, 2015) (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)). Negligent supervision or retention "occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." *Dep't of Env't. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005). "Put slightly differently, negligent supervision exists when the defendant 'negligently placed [the plaintiff/purported victim] under the supervision of [an employee], when [the defendant] either knew or should have known that [the

employee] had the propensity to commit [the torts committed].'" *Acts Ret.-Life Cmtys. Inc. v. Est. of Zimmer*, 206 So. 3d 112, 114 (Fla. 4th DCA 2016) (alterations in the original) (quoting *Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002)). "The plaintiff must allege facts sufficient to show that once an employer received actual or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action." *Hardy*, 907 So. 2d at 660. An employer's liability is not absolute, though, "not only must the employer owe a duty to the plaintiff, but the breach of that duty must be the proximate cause of the plaintiff's harm." *Id.* As a result, there "must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee." *Id.* at 661.

Hanson alleges that Rossiter, as warden, had a duty to protect female prisoners from sexual abuse. (Doc. 1, p. 36). Hanson also alleges that Rossiter was on notice of Pasquel's unfitness: Pasquel sexually assaulted four inmates over a two-year period before assaulting her and Rossiter was informed about at least two of these instances. (Doc. 1, pp. 2, 25.) These allegations are sufficient to allege Rossiter's knowledge of Pasquel's harmful propensities for sexually assaulting inmates before he sexually

assaulted Hanson, and thus that the sexual assault was foreseeable.[11] *See Love v. Lee Mem'l Health Sys.*, No. 2:20-CV-379-JES-MRM, 2022 WL 19653, at *7 (M.D. Fla. Jan. 3, 2022).[12]

Finally, Hanson alleges facts to show that Rossiter unreasonably failed to take corrective action after he received notice of Pasquel's harmful propensities, and plausibly alleges that, as a result, Pasquel sexually assaulted her. *Garcia*, 492 So. 2d at 441 ("The plaintiff must allege facts sufficient to show that once an employer

---

[11] Pasquel was also accused of sexually harassing inmates and maintaining a consensual relationship with an inmate during the same two-year period. (Doc. 1, pp. 25–26.) These instances may not be sufficient to demonstrate Pasquel's unfitness under Florida law. *See Smith v. Am. Online, Inc.*, 499 F. Supp. 2d 1251, 1267 (M.D. Fla. 2007) (an employee's history of sexual harassment is "entirely different than a propensity to batter others" and does not demonstrate actual or constructive knowledge of an employee's propensity to batter (citing *Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1298–99 (M.D. Fla. 2006))). Regardless of these accusations, I find the four allegations of sexual assault are sufficient to allege Rossiter's notice of Pasquel's harmful propensities.

[12] To the extent that Hanson argues that it was foreseeable that Pasquel would sexually assault her because of the pattern of sexual misconduct at Lowell, she cannot rely on the harmful propensities of Lowell staff as a whole to establish that Rossiter negligently retained or supervised an individual officer. *See Mercado*, 407 F.3d at 1162 (plaintiff could not bring a negligent supervision claim when he did not bring "forth any evidence that [the defendant] had notice that either of the officers had 'harmful propensities' or [were] otherwise unfit to serve as a police officer[]"); *Sachs v. Dixon*, No. 5:22-CV-314-KKM-PRL, 2023 WL 2500159, at *6 (M.D. Fla. Mar. 14, 2023) ("Allegations that other corrections officers committed sexual assaults in the past are insufficient to establish [the employee] himself engaged in such conduct or was otherwise known to be unfit so as to give [the employer] actual or constructive notice." (citing *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1321, 1324 (S.D. Fla. 2020))).

received active or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action such as discharge or reassignment." (citations omitted)). Two of the accusations occurred before Rossiter's tenure, and thus, reasonableness must be judged by his response to the third and fourth accusations. Hanson alleges that despite having sufficient evidence to support the third accusation, the investigation was suspended and never reopened. (Doc. 1, p. 25.) The investigation of the fourth accusation was closed based on insufficient evidence. (*Id.*) Rossiter took no action regarding either accusation. (*Id.*)

Whether it was reasonable for Rossiter to leave investigating the accusations against Pasquel to OIG and then rely on OIG's findings—despite his alleged knowledge that OIG investigations were inadequate, (Doc. 1, p. 8)—is a question of fact for the jury. *See Garcia*, 492 So. 2d at 441; *see also Love*, 2022 WL 19653, at *7 (concluding that a jury could find an employer did not take "appropriate action" in response to a sexual assault allegation when the investigation was potentially inadequate, and the employee returned to work before human resources spoke to the investigator about her findings); *Bolton v. United States*, 347 F. Supp. 2d 1218, 1219, 1221 (N.D. Fla. 2004) (allowing a negligent supervision and retention claim

21

to proceed past summary judgment when plaintiff presented evidence that others told a supervisor that the employee was "dirty" and "ogl[ed]" plaintiff but he failed to do anything before the employee coerced plaintiff into having sex with him); *Samedi v. Miami-Dade County*, 134 F. Supp. 2d 1320, 1353 (S.D. Fla. 2001) (concluding that "the reasonableness of the investigative and/or corrective action that [the] [c]ounty undertook once it was on notice of [p]laintiff's complaints of discrimination" was a question for the jury).

I find that Hanson states a claim of negligent supervision and negligent retention; however, negligent supervision and negligent retention are the same cause of action, so ultimately recovery is limited to one if they proceed to judgment. *See Mercado*, 407 F.3d at 1162 (treating negligent supervision and negligent retention claims as one cause of action); *see also Albra v. City of Ft. Lauderdale*, 232 F. App'x 885, 888 (11th Cir. 2007); *Blue v. Miami-Dade County*, No. 10-23599-CIV, 2011 WL 2447699, at *4 (S.D. Fla. June 15, 2011). Accordingly, Rossiter's motion to dismiss, (Doc. 17), is **DENIED regarding Counts VIII and IX.**

## IV.    DEPARTMENT OF CORRECTIONS' MOTION TO DISMISS

Hanson sues DOC for violation of rights under the Eighth Amendment (Count IV), and negligent supervision (Count X) and negligent retention (Count

XI) under Florida state tort law. (Doc. 1, pp. 31–32, 37–39.) DOC moves to dismiss

the Eighth Amendment claim because DOC is shielded from liability under § 1983

by sovereign immunity. (Doc. 27, pp. 4–5.) Hanson agrees that DOC is immune

from liability under § 1983 and asks to dismiss all three claims against the DOC

without prejudice so she may pursue her remedies in state court. (Doc. 28, p. 3.)

Accordingly, DOC's motion, (Doc. 27), is **GRANTED**. **Counts IV, X, and XI are**

**DISMISSED without prejudice**.

## V. CONCLUSION

For the foregoing reasons, the following is **ORDERED**:

1. Rossiter's motion to dismiss, (Doc. 17), is **DENIED.**

2. The Florida Department of Correction's motion to dismiss, (Doc. 27), is

   **GRANTED**.

3. Counts IV, X, and XI are **DISMISSED without prejudice**. The Clerk is

   directed to **TERMINATED** the Department of Corrections as a party.

4. No later than **September 17, 2025**, Rossiter must answer the complaint.

5. No later than **September 24, 2025**, the parties must file a case management report.

**ORDERED** in Ocala, Florida, on September 3, 2025.

Kathryn Kimball Mizelle
United States District Judge